COLLIER, Respondent, vs. TOWN OF SCOTT, Appellant.

*February 21—March 14, 1905.*

*Public health: Powers of health officer: Employment of physician: When town liable.*

1. Under sec. 1412, Stats. 1898, a health officer has no power, without the approval of the board of health, to take measures for the prevention, suppression, and control of a contagious disease. He cannot, without such approval, bind the town by the employment of a physician to attend a person afflicted with such a disease.

2. Sec. 1416, Stats. 1898, relates to the duties of the board of health; and the health officer cannot exercise the powers there conferred, without the approval of the board.

[3. Whether the board of health has any power to charge the town with the expense of medical services and medicine furnished to a person infected with smallpox, especially when such person is not a pauper, but able to pay such expense, not determined.]

APPEAL from a judgment of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Reversed.*

This is an action to recover, for physician's services and for drugs furnished, $101.30. Plaintiff is a physician, and defendant one of the towns of Lincoln county, Wisconsin. On April 10, 1901, the board of supervisors of said town met to organize as a board of health, and elected one A. W. Schulz chairman, one Fred Kleinschmidt clerk, and one William Hackbarth as health officer. In November one John Hintz, a well-to-do farmer residing in the town, and his family, became afflicted with smallpox. When first afflicted Dr. Walsh was employed by Hintz. Soon thereafter Dr. Walsh wrote to one Kluch, a resident of the town but not a member of the board of health or of the town board, of the trouble with the Hintz family, suggesting that they be quarantined. The letter was placed in the hands of Schulz, chairman, who promptly exhibited it to Hackbarth with the explanation that the letter showed there ought to be a sign put on the Hintz house, and to attend to it and put the sign on, if necessary. The next day Hackbarth called at the Hintz home and after talking with Hintz, through his daughter, went to the city of Merrill and had some talk with plaintiff about attending to the patients. What was said at that time between plaintiff and Hackbarth is in dispute, but, pursuant thereto, plaintiff at once visited the family and found them quarantined, and on his return sent them medicine by Hackbarth. Plaintiff continued to visit and treat the family until their recovery, and made eight calls for which he charged $80, and furnished medicine for which he charged $21.30. Hackbarth never reported to, nor received any instructions from, the board of health, and the board never approved his employment of

plaintiff. Plaintiff's claim was presented to the town board of audit, brought up at the annual meeting, but not allowed.

The action was tried in the county court, where judgment was rendered for defendant. Plaintiff appealed to the circuit court, the action was tried by the court, and the court found for the plaintiff and directed that judgment be entered against defendant for full amount of plaintiff's claim, with interest and costs, from which judgment this appeal was taken.

The cause was submitted for the appellant on briefs by *John Van Hecke,* and for the respondent on the brief of *Flett & Porter.*

To the point that sec. 1416, Stats. 1898, in providing that what is done shall be at the expense of the individual, does not intend to exempt the public from immediate liability, counsel for respondent cited *Rae v. Flint,* 51 Mich. 526, 16 N. W. 887; *Elliott v. Kalkaska Sup'rs,* 58 Mich. 452, 25 N. W. 461; *Wilkinson v. Long Rapids,* 74 Mich. 63, 41 N. W. 861; *Safford v. Detroit Board of Health,* 110 Mich. 81, 67 N. W. 1094.

KERWIN, J. The liability of towns for expenses incurred in the investigation, prevention, suppression, and control of dangerous contagious diseases is regulated by statute. Sec. 1411, Stats. 1898, provides for the organization of a board of health. Sec. 1412, Stats. 1898, provides that:

"It shall be the duty of every health officer, chosen under the provisions of the preceding section or under any village or city charter, upon the appearance of any dangerous contagious disease in the territory within the jurisdiction of the board of which he is a member, to immediately investigate all the circumstances attendant upon the appearance of such disease, make a full report to such board and also to the state board of health; and it shall likewise be his duty at all times promptly to take such measures for the prevention, suppression and control of any such disease as may in his judgment be needful and proper, subject to the approval of the board of which he is a member."

Under this statute the power conferred upon the health officer is to "investigate all the circumstances attendant upon the appearance of such disease, make a full report to such board and also to the state board of health." No authority is vested in the health officer to take measures for the prevention, suppression, and control of disease except subject to the approval of the board of health, and it is clear that the power to investigate and report does not embrace the power to take measures for the suppression and control of disease, vested in the board of health as a board. The statute does not appear to give the health officer any discretionary power concerning the prevention, suppression, and control of the disease, but simply imposes upon him the duty of investigating the circumstances attendant upon the appearance of the disease and making report. Whether the health officer could in any case bind the town by the employment of a physician to aid him in such investigation it is not necessary here to decide, because it appears that the plaintiff was not employed for any such purpose nor was it necessary that he should be. The afflicted family already had the services of a physician, the case had been declared smallpox, and the premises quarantined before the employment of plaintiff. The court below found as a fact that, before plaintiff was called, the health officer went to the home of Hintz, and was informed by a member of the family that they already had a doctor and wanted none other, and the premises had been quarantined and the case declared smallpox. Moreover, the cause of action set out in the plaintiff's complaint is for medical services and medicines furnished in the treatment and attendance upon John Hintz and family. The plaintiff testified that the health officer informed him that the family had had smallpox several days and were under quarantine and that he wanted him to take care of the case and furnish everything necessary. It is clear, therefore, that there is no claim in this action for services rendered by plaintiff in investigation and report, even if the

health officer had authority to employ plaintiff for such purpose. The board is authorized to take such measures as may be deemed necessary for the prevention, suppression, and control of the disease, and this involves the exercise of discretion, which the statute wisely vests in the board, and which was not intended to be given to the health officer, for obvious reasons. It is undisputed that the action of the health officer in the employment of plaintiff was never authorized or approved by the board of health as a board, or even by its members individually, and the question, therefore, is whether the health officer had power to employ plaintiff to treat the Hintz family and furnish them with medicine. We think it very clear that he had not. The power to charge defendant with the expenses of a physician in the prevention, suppression, and control of a dangerous and contagious disease, if it exists in any case, is vested in the board of health, and not in the health officer without the approval of the board, and the plaintiff was bound to know at his peril that the action of the health officer in that regard was subject to the approval of the board, and, such approval not having been given in any manner, plaintiff makes no case against defendant.

Counsel for respondent contends that the failure to secure the approval of the board of health does not relieve the town from liability, where the health officer takes such measures as in his judgment are necessary to prevent the spread of disease. We do not so understand the statute. The power to investigate and report is given to the health officer without limitation, but the power to take measures for the prevention, suppression, and control of the disease is vested in the board, and cannot be exercised by the health officer without approval of the board. Whether this legislation is wise or otherwise, and whether more extensive powers should be given to health officers, are not questions for the courts. The legislature, doubtless, in limiting the powers of the health officer and making them subject to the approval of the board, clearly intended

that such matters involving the exercise of judgment and discretion should be vested in the board and not in the health officer, and that the acts of the health officer in such matters should not be binding without the approval of the board. This seems to be the plain and obvious intention of the legislature and cannot be disregarded. *Barrett v. Hill Co.* (Tex. Civ. App.) 74 S. W. 811.

Counsel for respondent refers to the duty of the health officer under sec. 1416, Stats. 1898, but this section relates to the duties of the board of health and not the health officer, and it is very clear from the statute itself, as well as upon principle and authority, that the health officer could not exercise the duties imposed upon the board of health under sec. 1416, Stats. 1898, without the approval of the board. *Doyle v. Gill,* 59 Wis. 518, 18 N. W. 517; *McNolty v. School Directors,* 102 Wis. 261, 78 N. W. 439; *Young v. Blackhawk Co.* 66 Iowa, 460, 23 N. W. 923; *McIntire v. Pembroke,* 53 N. H. 462. Sec. 1416, Stats. 1898, provides that the charge shall be against the person so taken care of, or against any other person who may be liable for his support, and makes no exception. It is at least very doubtful whether the board of health has any power under the statutes of this state to charge a town with the expenses of medical services and medicine furnished to a person infected with smallpox, especially when such person is not a pauper, but well-to-do and amply able to pay for such services and medicine. Secs. 1416, 1421, Stats. 1898; *Kollock v. Stevens Point,* 37 Wis. 348; *Marshall Co. v. Roseau Co.* (Minn.) 101 N. W. 164; *Dodge Co. v. Diers* (Neb.) 95 N. W. 602; *Walker v. Boone Co.* (Iowa) 97 N. W. 1077; *McIntire v. Pembroke, supra; Gill v. Appanoose Co.* 68 Iowa, 20, 25 N. W. 908.

But the question here is not whether the appellant would be liable in case the employment was by authority or approval of the board of health, and we refrain from expressing any opinion as to the liability of the defendant if the employment

had been approved by the board. We hold that the health officer, without the approval of the board, had no authority to employ plaintiff on behalf of the town, or render it liable for the plaintiff's claim, and, therefore, that the judgment of the court below should be reversed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to the court below to enter judgment dismissing plaintiff's complaint.